GREER et al. v. THE DALLES NAT. BANK et al.

(Circuit Court, D. Oregon. December 14, 1899.)

No. 2,401.

BANKS—ACTING AS AGENT—RECOVERY OF TRUST FUNDS FROM RECEIVER.

Complainants, who were engaged in business in Chicago, agreed to loan a sum of money to a third person on the security of certain sheep, the security to be taken by, and the money to be paid through, the defendant, which was a national bank located in Oregon, and which was authorized to draw on complainants for the money. Defendant took the notes and security from the borrower, and forwarded them to complainants, and also drew on them, through its Chicago correspondent, for the amount of the loan, crediting the amount of the drafts to complainants on its books. On the day on which the proceeds of one of such drafts was paid to the correspondent, the defendant bank was closed by the comptroller, and placed in the hands of a receiver. *Held,* that the transaction was not one of banking, by which it was intended that the relation of debtor and creditor should be created either between the defendant and complainants or defendant and the borrower, but one in which defendant was merely the agent for both parties, which relationship was not changed by the fact that it was expected that the proceeds of the drafts would be mingled by defendant with its own funds, and that complainants were entitled to recover from the receiver as trust funds so much of the proceeds of the drafts as came into his hands.

This was a suit in equity against a national bank and its receiver to recover a sum alleged to be held by the receiver in trust for complainants.

Cotton, Teal & Minor, for complainants.
Huntington & Wilson, for defendants.

BELLINGER, District Judge. The complainants and one J. W. Blake entered into an agreement by which the former agreed to loan Blake $13,500, on the security of 12,000 head of sheep, which the former had bought, and intended to take to Nebraska. Com-

plainants agreed to make the loan upon the condition that Blake should arrange with the defendant bank to give them a bill of sale of the sheep, and that the bank would select some suitable person to take possession of the sheep in complainants' behalf. Blake was to take the sheep by railroad and trail to Nebraska to feed and fatten, the title thereto to remain in the meantime in complainants. The money so loaned was to be paid to or through the defendant bank. Complainants authorized the latter to draw for the money, and accordingly the defendant bank, by wire, did, on the 24th day of April, 1897, request complainants to deposit $5,000 to its credit with the First National Bank of Chicago, which was done. The amount so drawn was placed to the credit of the complainants upon the books of the bank. About the 1st of May, 1897, the formal written contract between Blake and the complainants was executed by Blake, and mailed by the bank to the complainants, together with Blake's notes for $13,500, all of which were received and accepted by the complainants on May 5th. On the day of the mailing of the notes and contract, the defendant bank drew upon the complainants for $8,500, and placed that amount, as before, to their credit on its books. The draft for this sum was mailed to the First National Bank of Chicago, and was received by that bank on the 5th of May, and sent by its correspondent on the same day to the stock yards for collection. The draft was paid by complainants on the same day, and after their possession of the Blake notes and contract. On the 6th of May the correspondent of the First National Bank of Chicago notified it that the draft was collected, and on the 7th remitted the proceeds to that bank, by which a credit was given to the defendant bank for the amount collected. The defendant bank did not open for business on the 7th of May, having been on that day closed by order of the comptroller of the treasury, and a receiver thereafter appointed, according to the usual course in such cases. Among other things, it is stipulated that complainants expected and that it was the right of the defendant to mingle the money received on these drafts with its own funds.

I am of the opinion that in this transaction the relation of debtor and creditor did not exist between the defendant bank and the complainants; that the transaction was not an ordinary banking transaction; that the bank was the agent and trustee of the complainants and Blake; and that the receiver should account for such portion of the moneys received by the bank under such trust as can be traced in his hands. The stipulation that the complainants expected and that it was the right of the defendant to mingle the money received with its own funds does not affect the nature of what was done. It merely shows the good faith of the defendant in mingling the complainants' money with its own. The question whether the bank received these funds as a trustee, for a specific purpose, depends upon the character of the transaction, as shown by all the facts and circumstances in the case, including the object which the parties intended to accomplish. The fact that complainants expected and were willing that the bank should mingle the money paid on the drafts with its own funds is a circumstance

which may tend to show a banking transaction, but it is not a conclusive circumstance, and, notwithstanding this, it may be shown that the money was received by the bank for a specific purpose, not within the usual course of banking. The mingling of the funds is a matter of convenience. An agent or trustee may do the same thing, without injury to the interests of the principal or beneficiary, who is not concerned in the question of the identity of the money held for him, so long as it is of the same character and value. When the defendant bank drew its drafts on complainants, the amount of each draft, as soon as drawn, was placed to complainants' credit. If this money was intended as a deposit to complainants' credit,—to create the relation of debtor and creditor between the parties,—the bank would not have drawn therefor. If the payment of the drafts was intended by the defendant bank as a payment to Blake, or for his account, the fund would not have been put to the credit of complainants. It is clear that what was thus done was not an ordinary banking transaction. It is a case where a bank undertakes to become a medium between two parties to accomplish a definite business dealing. As stated, it was not the intention of the parties that the complainants should become depositors in the defendant bank. It was neither a payment to Blake nor a credit to complainants. It was a step in a particular business transaction. Blake wanted to borrow, and complainants agreed to loan, the amount in controversy, on the security of 12,000 sheep. The parties were widely separated. They dealt with each other through the bank, which undertook to act for them. The bank became their agent in the deal. The bank acted, not as a banker, but as the agent or trustee of the parties, in what was done.

As to the $5,000 paid, there can be no relief, since it is not possible to trace, nor is it claimed that this money has been traced in the hands of the receiver. But as to the residue of the fund, as already stated,—the $8,500 paid at Chicago on the day on which the bank's doors were closed,—which specific sum is now in the receiver's hands or under his control, the complainants are entitled to the relief prayed for, and it is decreed accordingly.